IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| IN RE THE MATTER OF PERSONAL RESTRAINT OF | ) ) ) | No. 37547-1-III |
| RYAN DANIEL CORKERY. | ) ) ) ) | UNPUBLISHED OPINION |

FEARING, J. — By way of a personal restraint petition, Ryan Corkery challenges

prison discipline imposed on him based on an allegation that he conspired with others to

secrete a controlled substance into a corrections facility. Because no evidence supports

that Corkery agreed with another to commit the infraction, we grant Corkery relief. We

thereby decline to address additional contentions that the Department of Corrections

(DOC) violated his due process rights when conducting the infraction hearing.

FACTS

Ryan Corkery currently serves a sentence for second degree murder and first

degree arson committed in 2010. The question before this court is whether the State

Department of Corrections presented sufficient evidence to discipline Ryan Corkery for

conspiracy to introduce a controlled substance into prison. DOC captured the events leading to the alleged infraction on video.

On the morning of October 13, 2019, Ryan Corkery and fellow Coyote Ridge inmate David Tieken worked as dog handlers in the prison dog yard located near the prison medical unit. On that morning, inmate Angelo Jaramillo received his release medications from the prison medical unit. Jaramillo dropped a small baggie on the grass outside the medical building and gave a signal toward Tieken and Corkery standing in the dog yard. Jaramillo then left the area.

David Tieken left the dog yard and walked toward the grass where Angelo Jaramillo dropped the baggie. Corkery pointed toward the grass where Jaramillo dropped the baggie. Tieken then retrieved the bag. Less than two minutes after finding the baggie, Tieken reentered the dog yard. Corkery closed a gate behind Tieken.

A confidential source informed DOC corrections officers of a drug transfer. Correction officers discovered that the dropped package recovered by David Tieken contained Suboxone. Suboxone is a prescription medication used to treat those addicted to opioids.

DOC employee, James Rollins conducted an investigation into the transfer of the Suboxone. We do not disclose most of the results of the investigation because of DOC's sealing the interviews with witnesses. Some of the interviews support a finding that

Ryan Corkery knew that the package contained drugs. None of the information in the sealed documents suggests that Corkery agreed to assist in the transfer.

PROCEDURE

On November 8, 2019, DOC prepared an initial serious infraction report. Attachment A. The report alleged Ryan Corkery "conspired with another offender to transfer an unauthorized drug which, is in violation of WAC 603." Response of Department of Corrections, Exhibit 1, Attachment A. WAC 603 is DOC argot for WAC 137-25-030(603). On November 15, 2019, DOC served a disciplinary hearing notice on Corkery.

In response to the infraction notice, Corkery requested submission of a witness statement from David Tieken. Tieken submitted a statement, in which he declared that Corkery lacked knowledge of the reason for which Tieken left the dog yard and of the contents of the bag.

On November 20, 2019, Ryan Corkery appeared before a DOC hearing officer. Corkery testified at the hearing that he knew nothing about the dropping of Suboxone. Instead he pointed to the bag dropped by Angelo Jaramillo in order to learn from David Tieken as to the bag's contents. According to Corkery, Tieken responded that Corkery was not supposed to know of the nature of the contents.

The DOC hearing officer found Ryan Corkery guilty of the alleged infraction pursuant to WAC 137-25-030(603). The officer relied on a supplemental witness

statement, video footage, and confidential information, the source of which the DOC did

not disclose due to safety concerns. The hearing officer imposed the following sanctions:

> 180 days suspension of visitation applied
> 180 days inter/restrict/term corresp/tele/elect communication applied
> 180 days loss of fee-based recreation applied
> 75 days loss of good conduct time applied
> 180 days loss or limitation of store privileges applied
> 1 year denial of attendance at special events applied
> ua/breath alcohol testing applied
> Removal from waiting lists for work/other program assign applied
> Loss of housing assignment applied
> Frmt/review of custody classification applied

Response of the Department of Corrections, Exhibit 1, Attachment H.

Ryan Corkery appealed to the prison's associate superintendent, who upheld the

hearing officer's decision.

## LAW AND ANALYSIS

In his personal restraint petition before this court, Ryan Corkery challenges his

disciplinary hearing's process and result. He contends DOC conducted a disciplinary

proceeding, in which it failed to distinguish evidence. He argues he never received a

copy of any document that provided a summary of the submitted confidential

information. Corkery asserts that, because of these procedural irregularities, DOC

violated his due process rights. He also maintains that no evidence supports a finding

that he conspired to introduce a controlled substance into the prison facility. We agree no

4

evidence supports the infraction finding. Therefore, we do not address Corkery's due process contentions.

In order to prevail on a collateral attack by way of personal restraint petition, the petitioner must generally establish that a constitutional error resulted in actual and substantial prejudice or a nonconstitutional error resulted in a fundamental defect which inherently resulted in a complete miscarriage of justice. *In re Personal Restraint of Isadore*, 151 Wn.2d 294, 298, 88 P.3d 390 (2004). Nevertheless, these high standards do not apply to prison disciplinary actions when the petitioner lacked an earlier opportunity for judicial review. *In re Personal Restraint of Grantham*, 168 Wn.2d 204, 214, 227 P.3d 285 (2010); *In re Isadore*, 151 Wn.2d 294, 299 (2004). Instead, the petitioner must only show a restraint under RAP 16.4(b) and an unlawful restraint under RAP 16.4(c). *In re Personal Restraint of Isadore*, 151 Wn.2d at 299.

RAP 16.4(b) defines a restraint as:

> [T]he petitioner has limited freedom because of a court decision in a civil or criminal proceeding, the petitioner is confined, the petitioner is subject to imminent confinement, or the petitioner is under some other disability resulting from a judgment or sentence in a criminal case.

Restraint is unlawful under RAP 16.4(c) if the conditions or the manner of restraint violate the federal or Washington Constitution or other grounds exist on which to challenge the legality of the restraint. RAP 16.4(c)(6)-(7).

5

As a result of the infraction finding, Ryan Corkery lost good conduct credits. A prisoner holds a protected liberty interest in earning good time credit. *In re Personal Restraint of Higgins*, 152 Wn.2d 155, 164, 95 P.3d 330 (2004).

"Some evidence" must support the finding of a prison infraction for this court to affirm the discipline. *In re Personal Restraint of Grantham,* 168 Wn.2d 204, 216 (2010). Ascertaining whether "some evidence" exists does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. *Superintendent, Massachusetts Correctional Institution, Walpole v. Hill*, 472 U.S. 445, 455, 105 S. Ct. 2768, 86 L. Ed. 2d 356 (1985); *In re Personal Restraint of Johnston*, 109 Wn.2d 493, 497, 745 P.2d 864 (1987). Instead, this court determines whether any evidence in the record could support the conclusion reached by the disciplinary board. *Superintendent, Massachusetts Correctional Institution, Walpole v. Hill*, 472 U.S. 445, 455-56 (1985); *In re Personal Restraint of Johnston*, 109 Wn.2d 493, 497 (1987). The evidence must connect the petitioner to the infraction. *In re Personal Restraint of Reismiller*, 101 Wn.2d 291, 297, 678 P.2d 323 (1984).

The hearing officer found Ryan Corker guilty pursuant to WAC 137-25-030(603). This regulation declares:

> **Serious violations.**
> (1) Any of the following types of behavior may constitute a serious violation. Attempting or *conspiring to commit one of* the following violations, or aiding and abetting another to commit one of the following violations, shall be considered the same as committing the violation. . . .

**Category A**

. . . .

603 – Introducing or transferring any unauthorized drug or drug paraphernalia[.]

(Boldface in original.) The State limited its allegations in the serious infraction report and notice to a conspiracy to introduce a drug.

The State argues that "some evidence" supported that Corkery conspired with another offender. Although a criminal trial applies a different standard of proof than applicable in the review of a prison disciplinary hearing, our high court has ruled that, in order to convict a defendant of criminal conspiracy, the State must show that the conspirators agreed to undertake a criminal scheme and they took a substantial step in furtherance of the conspiracy. *State v. Bobic*, 140 Wn.2d 250, 265, 996 P.2d 610 (2000). The State must show that an actual agreement existed. *State v. Pacheco*, 125 Wn.2d 150, 159, 882 P.2d 183 (1994); *State v. Butler*, 165 Wn. App. 820, 834, 269 P.3d 315 (2012). When the State relies on circumstantial evidence, the circumstances must be consistent with each other and inconsistent with innocence. *State v. McGonigle*, 144 Wash. 252, 258, 258 P. 16 (1927).

The video footage, in a light favorable to DOC, showed that Ryan Corkery pointed toward a baggie and then closed the dog yard gate behind David Tieken once Tieken retrieved the Suboxone bag. In addition, the sealed documents support that Corkery knew what the package contained and that there would be a drug transfer. Nevertheless,

7

the issue before the hearing officer was whether Ryan Corkery conspired to introduce or transfer drugs. The question is whether "some evidence" shows that Corkery agreed with another to introduce the Suboxone.

Confidential information from those involved in the planning of the transfer of a controlled substance did not implicate Ryan Corkery. More importantly, DOC presented no evidence that Corkery agreed with anyone in advance to assist in the transfer of the controlled substance. The State focuses its argument in the brief to Corkery assisting David Tieken by pointing to the location where Angelo Jaramillo dropped the bag and by closing a gate. But one can assist without having reached an agreement to assist in advance. The evidence is consistent with Corkery spontaneously pointing to the bag and closing the gate. The State does not even argue in its brief that Corkery reached an agreement with any coconspirator.

The State failed to present some evidence to support an infraction of conspiracy under WAC 137-25-030(603).

## CONCLUSION

We grant Ryan Corkery's personal restraint petition. We remand to DOC to strike the infraction and the discipline orders as a result of the alleged infraction.

8

No. 37547-1-III
*In re Personal Restraint Petition of Corkery*


A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Fearing, J.

WE CONCUR:

_____
Lawrence-Berrey, J.

_____
Pennell, C.J.

9